## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Edward Day, on behalf of himself and all other similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **Case No.: 09 cv 6006** |
| Etan Industries, Inc., d/b/a Credit Protection Association, Etan General, Inc., and Credit Protection Association, L.P., | ) ) ) ) | **Judge Lefkow** |
| Defendants. | ) ) ) | |

## DEFENDANT'S FINAL REPLY IN SUPPORT OF
## DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

Defendant, Credit Protection Association, L.P., ("CPA"), by its attorneys David M. Schultz and Justin M. Penn, for its Final Reply in support of its Cross-Motion for Summary Judgment, states as follows[1]:

Plaintiff's theory is that the letters sent to the plaintiff, when read together, create the impression: (1) that the plaintiff had longer than 30 days to dispute his debt; and (2) that the plaintiff could only dispute his debt in writing. Neither letter says that. Plaintiff's theory is based upon how consumers perceive the series of letters, but requires some sort of evidence, not merely argument, in order to survive summary judgement. There is none.

---

[1] Defendant contemporaneously with this brief files a motion to strike portions of the argument in plaintiff's reply brief. As that motion explains, much of the argument in the reply brief relies on irrelevant evidence that was not disclosed until nine months after the close of discovery. This Final Reply does not address the arguments included in the motion to strike. In that motion, CPA requests leave to amend this brief in the event the motion is not granted.

130115369v1 54666

I.    **Plaintiff's theory is based upon the consumer's perception of the letters when read together and requires extrinsic evidence of consumers' perception to survive summary judgment.**

Plaintiff argues that he does not need extrinsic evidence because the nature of the FDCPA violation is so clearly evident from the language of the letters.  Pltf's Reply at p. 8.  Plaintiff cites to 6 pages of argument in which he set forth the alleged violations.  Pltf's Reply at p. 8.  The mere fact that it takes six pages for plaintiff to set forth the "clearly evident" violations gives the game away – this theory is not confined to the plain text of the letters.  The plaintiff must have extrinsic evidence, the most appropriate of which is a consumer survey, because the alleged violation is not clear from the text of a letter.

In the six pages of his motion to which plaintiff refers, plaintiff admits that the initial letter contains the correct and complete validation notice, conveying all of the necessary information.  Pltf's Motion at p. 9.  The plain language of the second letter explains that the 30 day validation period will expire within three weeks and accurately states "[i]f you do not seek validation, we will assume that your debt is valid at the end of that period."  All of these statements are true.  Plaintiff speculates that someone reading the letters together as a whole perceives that CPA requires a written dispute to prevent it from assuming the debt is valid.  Pltf's Motion at p. 9.

This "clearly evident" perception also requires the plaintiff's counsel's[2] interpretation of the unique definitions and distinctions between seeking validation,

---

[2] CPA makes this distinction between plaintiff's counsel's theory and plaintiff's theory because plaintiff obviously did not testify on anything even remotely close to the theories presented in these summary judgment briefs.

130115369v1 54666

seeking verification, and disputing a debt. There is no evidence related to show that consumers make the same distinctions. So plaintiff's theory relies upon the assumption that consumers understand the significance of these terms in the same way counsel does.

To be clear, the letter does not say what the plaintiff claims it says. The first letter contains no violative language whatsoever. There is nothing in the language of the second letter that is plainly overshadowing, false or misleading. The second letter does not use the word "writing" or "dispute" or any variations of those words. It does not say that the validation period extends for an additional 21 days, or that the plaintiff has more than 30 days from the initial letter to request verification. Plaintiff's speculation that someone, somewhere interprets that statement to require disputes in writing, or believes that they have longer than 30 days to dispute the debt, is not supported by anything. The plaintiff himself does not read the letters in this manner. In the absence of language that clearly violates the FDCPA, the plaintiff cannot survive summary judgment.

Plaintiff states in his response/reply that "[n]one of the cases Defendant cites support the special, increased evidentiary standard for FDCPA cases that Defendant suggests." Pltf's Reply at p. 7. That is wrong. Plaintiff cannot possibly expect that this Court will disregard over a decade of Seventh Circuit decisions detailing the evidentiary standard required in cases like this.

Plaintiff cites a few cases for the proposition that he does not need a survey in this case. In actuality, all of the cases plaintiff cites, like every case on this issue, show

3

that the plaintiff must have extrinsic evidence. Plaintiff does not set forth any of the facts of those cases, and instead just relies on the language in the opinions explaining that there are certain circumstances where a violation is clear on the face of the letter. That is not the case here, and those cases are easily distinguishable, both legally and factually.

For example, *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 418 (7th Cir. 2005) held that the debt collector's initial letter, as here, contained the proper validation notice, and that the following letter did not overshadow the notice because they "simply do not contain any overt misinformation, apparent contradiction, or noticeable lack of clarity concerning the validation period or the debtor's rights" under the FDCPA. Accordingly, the plaintiff could not survive summary judgment without extrinsic evidence showing how consumers perceived the second letter. *Id.*

In *Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 948 (7th Cir. 2004), the Seventh Circuit explained the general rule that "unclear whether the letter would confuse intended recipients of it, then to make out a prima facie case the plaintiff has to go further and present evidence (beyond her own say-so) of confusion, for example in the form of a carefully designed and conducted consumer survey." However, the Seventh Circuit held that the plain language of the letter violated the FDCPA such that no extrinsic evidence was necessary. That case is distinguishable for at least two reasons. First, unlike this case, the language in the *Chuway* letter could arguably be read, without a bizarre interpretation, to have incorrectly stated the amount that was being collected

4

from the consumer. *Id.* at 947. Second, also unlike this case, the plaintiff gave testimony supporting the plain interpretation of the letter. *Id.* at 947-48.

The Seventh Circuit reiterated in *Ruth v. Triumph Partnerships*, 577 F.3d 790, 800-01 (7th Cir. 2009) that a plaintiff "could not prevail in the district court simply by proving that statements in the notice were false" and "[w]hether they were false or not, [FDCPA plaintiffs have] to prove that an unsophisticated consumer would be deceived or misled by them." The letter in *Ruth* was held to be plainly false, however, because it clearly stated that the debt collector intended to share the nonpublic information they had received by virtue of acquiring and collecting on the debts, which amounted to a clear threat to take action that it could not legally take. *Id.* at 802. The plaintiff has not directed this Court to any plain language that clearly evidences an FDCPA violation[3].

The Seventh Circuit has clearly and consistently held that if it is unclear how an unsophisticated consumer would find a communication deceptive, misleading, or confusing, extrinsic evidence is required to show how consumers perceive the communication. Each of those cases also explains that the most appropriate form of extrinsic evidence is a "carefully designed and conducted consumer survey." *McMillan v. Collection Professionals Inc.,* 455 F.3d 754, 760 (7th Cir. 2006); quoting *Chuway v. National Action Financial Services, Inc.,* 362 F.3d 948 (7th Cir. 2004), referring to *Walker v. National Recovery, Inc.,* 200 F.3d 500, 501 (7th Cir. 1999). The rule is applied uniformly

---

[3] Plaintiff also relies upon *Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996) for the proposition that not all cases require the heightened evidentiary standard of extrinsic evidence. As an initial matter, CPA does not assert that all FDCPA claim require extrinsic evidence. But this one does. In any event, *Avila* was decided prior to the wealth of case law that has developed directly on point.

5

when claims are asserted, like the plaintiff's claims, under 15 U.S.C.§1692g and §1692e. Plaintiff's failure to produce a survey is fatal to his claims.

II.     **The plaintiff's reply does not refer to any evidence that the truthful statements in CPA's letters misled anyone.**

CPA explained that the plaintiff's theories rest on his unsupported interpretation of what CPA's two letters, when read together, convey to the unsophisticated consumer. Plaintiff's counsel persist in his bizarre, paradoxical interpretation and application of the terms verification and validation as those terms relate to consumer disputes. These peculiar theories, absent evidence, remain just that – theories.

There is no evidence that anyone, including the plaintiff, shares counsel's understanding of the terms verification and validation, and their interplay with the concept of disputing a debt. CPA's initial notice is perfect. As required under the FDCPA, the notice contains a three-part disclosure. The first sentence does not have an "in writing" component but the second and third sentences do. SMF ¶21. Nothing in the second letter states that the validation period extends, or that disputes must be in writing. The statements in the letters are truthful, and CPA is entitled to summary judgment.

III.     **Even if plaintiff's understanding of the letter is irrelevant, it is the only evidence in this case, and it shows that CPA is entitled to summary judgment.**

Plaintiff spends a great deal of effort trying to convince this Court to disregard his testimony. It is clear that plaintiff's testimony helps CPA, and not his case. It is not

130115369v1 54666

clear that his testimony is irrelevant. His testimony is relevant to the unsophisticated consumer standard, especially in the absence of any other evidence.

Although "uninformed, naïve, or trusting," the unsophisticated consumer "possesses the rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses reasonable intelligence, and is capable of making basic logical deductions and inferences." *Petit*, 211 F.3d at 1060. As a result, courts will not "entertain a plaintiff's bizarre, peculiar, or idiosyncratic interpretation" of collection documents. *McMillan*, 455 F.3d at 758.

The plaintiff's individual characteristics are relevant to the unsophisticated consumer standard. For example, on remand from the Seventh Circuit, a court in this District charged the unsophisticated consumer with knowledge of the account history beyond communications with the debt collector and the creditor, extending the knowledge to include prior legal matters concerning the account. *Turner v. J.V.D.B. & Assocs., Inc.*, 483 F.Supp.2d 631, 635 (N.D.Ill. 2007). In *Turner*, the District Court imputed the unsophisticated consumer with the plaintiff's knowledge of his own bankruptcy that discharged his debt. *Id.* The court held that even an unsophisticated consumer would possess the plaintiff's knowledge that the debt discharged in bankruptcy is not later payable, regardless of the letter's demand. *Id.* The recent decision by Judge Norgle in *Franklin v. CCN Credit Servs., Inc.*, applies the exact same analysis in granting an FDCPA defendant summary judgment. Case No. 09-C-5307 (decided June 15, 2011) (citing *Turner* and discussing that the plaintiff's interpretation is

7

relevant in cases like this). A copy of the *Franklin* opinion is attached hereto as Exhibit 1.

Plaintiff wants his own testimony disregarded in this case. While his own perception of the letters is not sufficient to survive summary judgment, as the *Turner* court demonstrated, it can be relevant to the unsophisticated consumer standard. Plaintiff has not shown why the hypothetical unsophisticated consumer's knowledge does not overlap with his own knowledge. While the unsophisticated consumer may not share plaintiff's experiences as a serial FDCPA litigant, plaintiff's testimony is not particularly bizarre, peculiar, or idiosyncratic. To the contrary, his inability to explain what was false about the letters makes perfect sense and is a rational understanding of the plain language of the letters.

## IV. Even if there was any evidence to support the claims, CPA's letters do not rise to the level of an FDCPA violation.

Plaintiff misunderstands CPA's argument concerning materiality. The Seventh Circuit has explained that false or deceptive statements that are immaterial. *See Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 758 (7th Cir. 2009) ("[a] statement cannot mislead unless it is material – a false but non-material statement is not actionable").

As CPA explained, even assuming this Court determined that the letters were false in some technical sense such that they gave the appearance that consumers could only dispute in writing, or could dispute outside the statutory period (contrary to Mr. Day's own belief), or that they could only seek verification in writing, this perception is immaterial to the collection of the plaintiff's debt. The only evidence as to how a

8

consumer perceives the letters is the plaintiff's own testimony, which demonstrates that he was not misled or confused.  CPA is therefore entitled to summary judgment.  *Wahl v. Midland Credit Management, Inc.*, 556 F.3d 643, 346 (7th Cir. 2009) ("[i]f a statement would not misled the unsophisticated consumer, it does not violate the FDCPA  - even if it is false in some technical sense").

WHEREFORE, For the foregoing reasons, Credit Protection Association, L.P. respectfully requests this Court enter judgment in its favor on Plaintiff's Complaint.

Respectfully Submitted,

Credit Protection Association, L.P.

/s/ Justin M. Penn
One of the attorneys for defendant

David M. Schultz
Justin M. Penn
HINSHAW & CULBERTSON LLP
222 North LaSalle Street, Suite 300
Chicago, Illinois 60601-1081
312-704-3000

9

<u>**CERTIFICATE OF SERVICE**</u>

I, the undersigned, certify that I filed Defendant's Final Reply In Support Of Defendant's Cross-Motion For Summary Judgment through the Court's ECM/CF system, which will cause electronic notification of this filing to be sent to all counsel of record on June 27, 2011.

s/Justin M. Penn

Justin M. Penn

130115369v1 54666