UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EDWARD DAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ETAN GENERAL, INC., ETAN | ) | No. 09 C 6006 |
| INDUSTRIES, INC., doing business as | ) | Judge Joan H. Lefkow |
| CREDIT PROTECTION | ) | |
| ASSOCIATION, and CREDIT | ) | |
| PROTECTION ASSOCIATION L.P., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Plaintiff Edward Day filed suit against Credit Protection Association, L.P. ("CPA"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA" or the "Act"), 15 U.S.C. § 1692, *et seq.*[1] Before the court are the parties' cross motions for summary judgment and CPA's motion to strike. For the following reasons, Day's motion for summary judgment [#37] will be denied, CPA's motion for summary judgment [#40] will be granted, and CPA's motion to strike [#48] will granted.[2]

---

[1] Defendants Etan General, Inc. and Etan Industries, Inc. were dismissed without prejudice on October 13, 2010. (*See* Dkt. #25.) Day's complaint is styled as a putative class action, however he has not filed a motion for class certification. Therefore the court assumes that Day pursues the FDCPA claims on his own behalf only.

[2] This court has jurisdiction pursuant to the FDCPA, 15 U.S.C. § 1692k(d), and pursuant to 28 U.S.C. § 1331. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events that give rise to Day's claim occurred in this district.

**SUMMARY JUDGMENT STANDARD**

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To determine whether any genuine issue of fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c) & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the nonmoving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue at trial. *Id.* at 324; *Insolia* v. *Phillip Morris Inc.*, 216 F.3d 596, 598–99 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver* v. *Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

### RELEVANT FACTS[3]

Edward Day is an adult who resides in Arlington Heights, Illinois. Sometime prior to August 2008, he incurred a debt to Comcast for personal or household use of Comcast's cable, internet, or telephone service. Day's account with Comcast fell into arrears and Comcast disconnected his service on August 28, 2008.

---

[3] The facts set forth in this section are derived from the statements of fact and supporting documents submitted by the parties to the extent they comport with Local Rule 56.1.

CPA is a limited partnership in Dallas, Texas that is licensed by the State of Illinois as a collection agency. It regularly attempts to collect consumer debts using the mail and phone and has forty employees who attempt to collect debts by phone. CPA oversees the collection of approximately 700,000 active debts and sends approximately 100,000 letters per day.

CPA obtained Day's unpaid debt to Comcast on October 5 or 6, 2008. At that time, the debt was in default. On October 6, 2008, CPA sent Day a collection letter. (Pl.'s Ex. 5.) The letter stated that Day's account with Comcast was past due in the amount of $1,492.85 and that CPA had been retained by Comcast to collect the debt. The reverse side of the letter contained the following notice:

> The Fair Debt Collection Practices Act requires that we, as the debt collector, inform you that unless you, within thirty days after receipt of this initial notice, dispute the validity of the debt, or any portion thereof, the debt will be assumed valid by the debt collector. If you notify the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of judgment against you and mail it to you. If requested in writing within thirty days, the debt collector will also provide you with the name and address of the original creditor, if different from the current creditor.

(Pl.'s Ex. 5 at 2.) Day received the letter within two to five days of the date it was mailed. When he read the letter, Day understood that he had thirty days to dispute the validity of his alleged debt to Comcast.

On October 24, 2008, CPA sent Day a second collection letter. The first paragraph stated:

> Comcast has informed us that no payment or arrangement was made to settle your overdue account in the amount of $1,492.85, which includes 5 non-returned equipment [*sic*] valued at $855.00. *Be advised that the thirty (30) day validation period discussed in our first letter concerning the validity of your debt will pass within the next three (3) weeks. If you do not seek validation, we will assume that your debt is valid at the end of that period.* If this account is not settled, your

>name and account number will be reported to credit bureaus throughout the country.

(Pl.'s Ex. 6 at 1 (emphasis added).) Day was not confused by the language of CPA's second letter.

Day disputed the debt with the credit reporting agencies after he received CPA's second notice and reviewed his credit report.

## ANALYSIS

**I.   The FDCPA**

The FDCPA sets forth types of information that must be included in a debt collector's notice of debt. *See* 15 U.S.C. § 1692g(a). Section 1692g(a)(3) provides that a notice of debt must include "a statement that unless the consumer, within thirty days after receipt of notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector." *Id.* § 1692g(a)(3). Section 1692g(a)(4) provides that a notice of debt must provide "a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt." *Id.* § 1692g(a)(4).

The FDCPA also prohibits the use of "false, deceptive, or misleading representations in connection with the collection of any debt." *See id.* § 1692e. The Act provides a non-exhaustive list of the types of conduct that might constitute false, deceptive, or misleading representations. A debt collector may not make "threat[s] to take any action that cannot legally be taken or that is not intended to be taken," *id.* § 1692e(5), or "use . . . any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.*

5

§ 1692e(10). The parties agree that CPA is a debt collector under the FDCPA. *See id.* § 1692a(6).

Day asserts that CPA's second collection letter violates the FDCPA's notice requirements and its prohibition against the use of false or misleading statements because it (1) indicates that a consumer would need to dispute the validity of the debt in writing, and (2) indicates that a consumer had more than thirty days from the date of receipt of his initial collection notice to dispute the validity of the debt. Day does not contest that CPA's first collection letter comports with the requirements of the FDCPA. Indeed, the first letter copies the Act's language verbatim. *See id.* § 1692g(a)(1)–(5).

The court assesses CPA's collection notice from the perspective of an "unsophisticated debtor." *See, e.g.*, *McMillan* v. *Collection of Prof'ls Inc.*, 455 F.3d 754, 758 (7th Cir. 2006) (quoting *Gammon* v. *GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994)); *Pettit* v. *Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000) (quoting *Bartlett* v. *Heibl*, 128 F.3d 497, 500 (7th Cir. 1997); *Jang* v. *A.M. Miller & Assoc.*, 122 F.3d 480, 483 (7th Cir. 1997)). The unsophisticated debtor is assumed to be "'uninformed, naive, [and] trusting' but is also assumed 'to possess rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences.'" *McKinney* v. *Cadleway Props., Inc.*, 548 F.3d 496, 503 (7th Cir. 2008) (quoting *Durkin* v. *Equifax Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005)). The standard presumes that "statements are not confusing or misleading unless a significant fraction of the population would be similarly misled." *Veach* v. *Sheeks*, 316 F.3d 690, 693 (7th Cir. 2003).

The plaintiff bears the burden of proving that a collection letter is confusing and therefore fails to provide the required notice, *see* 15 U.S.C. § 1692g, or that it contains a false statement that would mislead or deceive an unsophisticated debtor. *See* 15 U.S.C. § 1692e. If the letter is unclear or misleading on its face, then the court may grant summary judgment for the plaintiff without requiring the plaintiff to submit extrinsic evidence. *See, e.g.*, *Ruth* v. *Triumph P'ships*, 577 F.3d 790, 801 (7th Cir. 2009) (discussing burden of proof for establishing violation of section 1692e); *Chuway* v. *Nat'l Action Fin. Servs. Inc.*, 362 F.3d 944, 948 (7th Cir. 2004) (discussing burden of proof for establishing violation of section 1692g). On the other hand, if it is not clear that the letter would mislead its intended recipients, or if the allegedly false statements are not plainly misleading or deceptive, then the plaintiff must produce extrinsic evidence, such as consumer surveys, to demonstrate how the language would actually affect consumers. *Ruth*, 577 F.3d at 800–01; *Chuway*, 362 F.3d at 948. "The Act is not violated by a dunning letter that is susceptible of an ingenious misreading, for then every dunning letter would violate it." *Chuway*, 362 F.3d at 948 (quoting *White* v. *Goodman*, 200 F.3d 1016, 1020 (7th Cir. 2000)). At the same time, a "debt collector may not overshadow or contradict [the validation notice] with other messages sent . . . within the validation period." *Durkin*, 406 F.3d at 417 (quoting *Chauncy* v. *JDR Recovery Corp.*, 118 F.3d 516, 518 (7th Cir. 1997)).

II.     **Day's Supplemental Evidence and CPA's Motion to Strike**

With his reply brief, Day has submitted a new declaration from Dean Andersen, another consumer who was subject to a debt collection by CPA. Andersen's declaration describes a call that he made to CPA on July 2, 2010 and attaches a transcript of a recording that he made of that call. Day asserts that he "first obtained" a copy of the recording on June 3, 2011, eleven days

after CPA filed its response brief and cross-motion for summary judgment, and that he did not obtain Andersen's declaration until June 13, 2011, the day his reply brief was filed.

The transcript of Andersen's call indicates that Andersen first talked to a live person at CPA and stated that he wanted to "dispute" a debt that he allegedly owed to Time Warner. (Andersen Decl. Ex. 1.) The CPA employee stated that Andersen would be transferred over to the dispute resolution line and that "[t]hey will give you all the information you need to . . . dispute this account." (*Id.*) The Dispute Resolution Line consisted of a pre-recorded female voice, which stated, in relevant part, "This recording will give you information on how to file a claim on your account. Please note that all claims must be submitted in writing." (*Id.*) Day argues that this recording demonstrates that CPA requires consumers to submit disputes in writing and that therefore CPA's second collection letter must have indicated that consumers can only submit a dispute in writing, in violation of section 1692g(a)(3). Day also asserts that the prerecorded message contradicts the testimony of CPA's Rule 30(b)(6) representative, who testified that CPA does not "handle" a written dispute differently from an oral dispute.

CPA moves to strike the Andersen declaration on the grounds that discovery had closed nine months prior to the filing of Day's reply brief. Day responds that it was CPA's obligation to disclose the recording as part of its Rule 26(a)(1) disclosures and therefore CPA has not been prejudiced by the late submission of new evidence. Rule 26(a)(1), however, only requires that a party produce copies or description of information that it "may use to support its claims or defenses." *See* Fed. R. Civ. P. 26(a)(1)(A)(iii) & 2000 amendment notes ("The scope of the disclosure obligation . . . cover[s] only information that the disclosing party may use to support its position. . . . A party is no longer obligated to disclose witnesses or documents, whether

8

favorable or unfavorable, that it does not intend to use."). Day has not explained why CPA would have relied on the recording, which is not from the time period relevant to this case, to support its claims or defenses. Nor does Day assert that he submitted any written discovery requests to CPA that would have encompassed the recording. Moreover, Day's attempt to characterize the declaration as newly discovered evidence is not persuasive where Andersen made the call eleven months before Day filed his reply brief. In short, Day has offered no convincing explanation for his failure to submit the evidence regarding CPA's prerecorded Dispute Resolution Line in a timely manner.

Of more importance, however, the Andersen declaration is not relevant to Day's claim. Day does not allege that he called CPA on the phone or that he listened to the prerecorded message on the Dispute Resolution Line. His FDCPA claims focus solely on the contents of the two written debt collection notices that he received in October 2008. Andersen's call to CPA, made nearly two years after the relevant time period, is irrelevant to the issue of whether an unsophisticated debtor would have been misled by the written debt collection notices. Therefore the court need not consider the Andersen affidavit in ruling on the pending motions for summary judgment. For all of these reasons, CPA's motion to strike the Andersen declaration will be granted.

### III. Whether the Second Collection Letter Indicates that a Consumer Must Dispute the Debt in Writing to Prevent CPA from Assuming the Debt is Valid

Day makes two variations of the same argument in support of his claim that CPA's second collection letter violates sections 1692g(a)(3), 1692e(5), and 1692e(10). He focuses on the following sentence from CPA's second collection notice: "If you do not seek validation, we will assume that your debt is valid at the end of that period." First, Day argues that this sentence

9

violates section 1692g(a)(3) because it requires a consumer to submit a dispute in writing to prevent CPA from assuming that a debt is valid. Second, Day argues that this sentence constitutes a threat that CPA would assume the debt was valid if the consumer did not dispute the debt in writing, a violation of section 1692e(5).

As noted above, section 1692g(a)(3) provides that a notice of debt must include a statement that the consumer has thirty days to dispute the validity of the debt and that otherwise the debt will be assumed to be valid. The Ninth Circuit, and several district courts in this circuit, have held that it is a violation of section 1692g(a)(3) to require that a dispute, in order to be effective, must be in writing. *See Camacho* v. *Bridgeport Fin., Inc.*, 430 F.3d 1078, 1080–82 (9th Cir. 2005); *Campbell* v. *Hall*, 624 F. Supp. 2d 991, 1000 (N.D. Ind. 2009) (collecting cases). The Third Circuit, and several district courts in this circuit, have taken the contrary position that section 1692g(a)(3) implicitly *requires* that a dispute be submitted in writing in order for a consumer to effectively dispute a debt. *See Graziano* v. *Harrison*, 950 F.2d 107, 112 (3d Cir. 1991); *Campbell*, 624 F. Supp. 2d at 998 (collecting cases). Neither party has cited a Seventh Circuit case that addresses this issue.

The court need not decide whether section 1692g(a)(3) prohibits or requires that a dispute be submitted in writing because CPA's second collection letter does not plainly indicate the means by which a dispute must be submitted. The letter simply states that if a consumer does not "seek validation," CPA will assume the debt is valid. It does not even use the word "writing," or a synonym, unlike the dunning letters in the cases cited by Day. *See Camacho*, 430 F.3d at 1079 (letter stated "Unless you notify this office *in writing* within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume

this debt is valid"); *Jerman* v. *Carlisle, McNellie, Rini, Kramer & Ulrich*, 464 F. Supp. 2d 720, 721 (N.D. Ohio 2006) (letter stated that "the debt described herein will be assumed to be valid by the Creditor's law firm, unless the debtor(s), or either one of them, within thirty (30) days after receipt of this notice, dispute, *in writing*, the validity of the debt or some portion thereof" (emphasis added)); *Turner* v. *Shenandoah Legal Group, P.C.*, No. 3:06CV045, 2006 WL 1685698, at *3 (E.D. Va. Jun. 12, 2006) (letter stated "PLEASE NOTIFY U.S. [*sic*] *IN WRITING* WITHIN 30 DAYS AFTER RECEIPT OF THIS LETTER IF YOU DISPUTE THE VALIDITY OF THIS DEBT, OR ANY PORTION OF IT, OTHERWISE, WE WILL ASSUME THAT THE DEBT IS VALID" (emphasis added)).

Day's interpretation of CPA's collection notice is premised on the notion that the only way for a consumer to "seek validation," as instructed in CPA's letter, is to submit a written dispute under section 1692g(a)(4). Section 1692g(a)(4) does not mention "validation," however. (Day also concedes that the FDCPA does not define the term "validation.") Given that section 1692g(a)(4) does not even use the term "validation," the court is not persuaded that an unsophisticated debtor would reach the conclusion, urged by Day, that because he must "seek validation" of his debt with CPA he must also do so "in writing" under that specific subsection of the statute. Day's argument that the collection notice is plainly confusing is unavailing.

Day may still prevail, however, if he presents extrinsic evidence of the letter's actual effect on consumers, such as a consumer survey. *See, e.g.*, *Ruth*, 577 F.3d at 800; *Durkin*, 406 F.3d at 415; *Chuway*, 362 F.3d at 948. He has not done so. Indeed, Day testified four times at his deposition that he was not confused by the letter. Because the letter is not plainly confusing, and Day has not presented any extrinsic evidence to support the conclusion that

consumers do, in fact, find the statements confusing, there is no issue of material fact as to whether CPA's second collection letter violates section 1692g(a)(3).

Nor, for these same reasons, does the collection letter violate section 1592e(5), which prohibits "threat[s] to take any action that cannot legally be taken or that is not intended to be taken," or section 1692e(10), which prohibits the making of a "false representation . . . to collect any debt." The letter is not plainly misleading any more than it is plainly confusing. Day has presented no extrinsic evidence in support of his claim. Accordingly, there is no genuine issue of material fact as to whether CPA's second collection letter violates sections 1692g(a)(3), 1592e(5), or 1692e(10) by indicating that a dispute must be submitted in writing.

IV. **Whether the Second Collection Letter Indicates that a Consumer Had Longer than the Statutory Thirty-Day Period to Dispute the Validity of the Debt**

In support of his claim that CPA violated sections 1692g(a) and 1692e(10), Day focuses on the following sentence from the second debt collection letter: "Be advised that the thirty (30) day validation period discussed in our first letter concerning the validity of your debt will pass within the next three (3) weeks." Day argues that this sentence would lead an unsophisticated debtor to conclude that the FDCPA's thirty-day validation period extended until three weeks from the date of receipt of the second collection notice. Day asserts that an unsophisticated debtor would therefore be lulled into waiving his rights under the Act, because in actuality a debtor only has only thirty days from the date of receipt of the *initial* collection notice to dispute the validity of the debt. *See* 15 U.S.C. § 1692g(a)(3)–(4). For example, Day asserts that he had until approximately November 10, 2008 at the latest to dispute the validity of his debt, or thirty days from October 11, 2008, when he received CPA's first notice. Day asserts that CPA's second collection letter incorrectly indicated that the statutory thirty-day period would not expire

12

until November 14, 2008 at the earliest, calculated as thirty days from the date of the second collection letter. Day argues that the second collection letter therefore violates section 1692g(a) because it does not comply with the FDCPA's notice requirements and violates and 1692e(10) because it constitutes a "false representation or deceptive means to collect or attempt to collect a debt."

APA's second letter merely states, however, that the validation period will expire "within the next three (3) weeks." This statement is factually correct. Even an unsophisticated debtor can be expected to understand that the use of the word "within" does not indicate that the validation period expires on a date certain at the end of the third week. Moreover, the proceeding clause references the "validation period *discussed in our first letter*." The logical meaning of the sentence is that the validation period will expire according to the terms of CPA's first collection notice, and that because of the timing of the two letters the expiration will occur sometime within the next three weeks. This case is not like *Russell* v. *Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996), cited by Day, where the debt collection agency sent a second notice that clearly misstated the statutory validation period by demanding "**PAYMENT IN FULL** WITHIN 5 DAYS." In *Russell*, it was plainly misleading to state that payment in full was due "within 5 days" because that gave the debtor only twenty-five days from the date of the first notice to dispute the debt. *See id.* at 36.[4] Nor is this case like *Flowers* v. *Accelerated Bureau of Collections, Inc.*, No. 96 C 4003, 1997 WL 224987, at *3 (N.D. Ill. Apr. 30, 1997), the other case cited by Day, where the defendant's follow-up letter "demanded that [the consumer]

[4] The first collection notice in *Russell* was dated February 26, 1992. 74 F.3d at 32. The second notice was dated March 17, 1992. *Id.* at 33.

telephone or write *immediately* . . . but made no reference to the fact that she still had approximately 13 days in which to voice her concerns." Here, in contrast, CPA's second letter (a) made clear that it was referring to the "validation period discussed in our first letter," and then (b) stated, correctly, that the validation period would expire "within" the next three weeks. Thus the letter does not clearly imply that "the rights set forth in the first letter were no longer available." *Cf. Flowers*, 1997 WL 224987, at *3.

For all of these reasons, CPA's second collection letter does not fall within the category of letters where it is "apparent just from reading the letter that it is unclear," *Chuway*, 362 F.3d at 948, or where the statement is so "plainly deceptive" that the court will not require Day to "prove what is already clear." *Ruth*, 577 F.3d at 801. Therefore Day must present some evidence demonstrating that the letter would actually confuse or mislead consumers. Because he has not presented any extrinsic evidence, there is no genuine issue of material fact as to whether CPA's second collection notice violates sections 1692g(a)(3) or 1692e(10). CPA's motion for summary judgment will be granted, and Day's motion for summary judgment will be denied.

## CONCLUSION AND ORDER

For the reasons set forth above, Day's motion for summary judgment [#37] is denied, CPA's motion for summary judgment [#40] is granted, and CPA's motion to strike [#48] is granted. Judgment is entered in favor of CPA. This case is terminated.

Dated: March 30, 2012         ENTER: _____
                                     JOAN HUMPHREY LEFKOW
                                     United States District Judge